**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| LESHIA BAXTER and ARTHUR KESHISHYAN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GRAND CELEBRATION CRUISES LLC, a Florida limited liability company and BLUE STAR CRUISES LLC, a Florida limited liability company. | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff Leshia Baxter ("Baxter" or "Plaintiff Baxter") and Plaintiff Arthur Keshishyan ("Keshishyan" or "Plaintiff Keshishyan") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Grand Celebration Cruises LLC ("Grand Celebration" or "Defendant Grand Celebration") and Defendant Blue Star Cruises LLC ("Blue Star" or "Defendant "Blue Star") to: (1) stop their practice of placing calls using an automatic telephone dialing system ("ATDS") and/or using an artificial or prerecorded voice to the cellular telephones and residential telephone numbers of consumers nationwide without their prior express written consent, (2) enjoin Defendants from continuing to place prerecorded telephone calls to consumers who did not provide their prior express written consent to receive them, and (3) obtain redress for all persons injured by their conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as

1

to all other matters, upon information and belief, including investigation conducted by their attorneys. [1]

## PARTIES

1.      Plaintiff Leshia Baxter is a natural person and resides in Mamile, Arkansas.

2.      Plaintiff Arthur Keshishyan is a natural person resides in Glendale, California.

3.      Plaintiff Baxter and Plaintiff Keshishyan will be collectively referred to herein as "Plaintiffs."

4.      Defendant Grand Celebration Cruises LLC is a limited liability company existing under the laws of the State of Florida.  Its principal office address is 220 Moyses Road, Winter Park, Florida 32792.  Defendant Grand Celebration does business throughout the United States, including in the State of Florida and in this District.

5.      Defendant Blue Star Cruises LLC is a limited liability company existing under the laws of the State of Florida.  Its principal office address is 8270 Woodland Center Boulevard, Suite 150, Tampa, Florida 33614. Defendant Blue Star does business throughout the United States, including the State of Florida, and in this District.

6.      Defendant Grand Celebration and Defendant Blue Star will be collectively referred to herein and "Defendants."

7.      Each Defendant was the agent of the other Defendant and was during all relevant times acting and conducting itself within the purpose and scope of such agency. Plaintiffs are informed and believe, and allege thereon, that during all relevant times mentioned herein each Defendant was the principal, agent or employee of the other Defendant, and in acting and

---

[1] Residential telephone numbers will be referred to herein as "Landlines."

[2] Defendant Blue Star advertises the telephone number 1-800-349-5359.  *See https://www.facebook.com/BlueStarCruises/.*  Upon information and belief, when this number is called, the agent

conducting itself as such principal, or within the course and scope of such employment or agency, took at least some part in the acts and omissions hereinafter set forth by reason of which each defendant is liable to Plaintiffs for the relief sought herein. At all times relevant mentioned herein, each Defendant ratified the unlawful conduct of the other Defendant, who were both acting within the scope of their agency or employment, by accepting the benefits of any transaction with knowledge of the wrongdoing, or otherwise by failing to repudiate or retract the misconduct or wrongdoing.[2]

## JURISDICTION & VENUE

8.      This Court has federal subject matter jurisdiction under 28 U.S.C. §1331 as the action arises under the Telephone Consumer Protection Act, 47 U.S.C § 227 *et seq*., which is a Federal statute.

9.      The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants are registered to do business in the State of Florida, are headquartered in this District, and regularly conduct business in the State of Florida and in this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District, conduct a significant amount of business within this District and market to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

11.     Defendants are travel agencies advertising the existence of their services to consumers via telephone.

---

[2] Defendant Blue Star advertises the telephone number 1-800-349-5359.  *See https://www.facebook.com/BlueStarCruises/.*  Upon information and belief, when this number is called, the agent identifies him or herself as an agent of Grand Celebration Cruises.

12.    Defendants transmit *en masse* a prerecorded message (that tries very hard to sound like a live person) that states the following:

> "Hello, oh, hi there!...Oh, I am so sorry about that - I was, um…having a little problem with my headset.  Anyway, my name is Emily and I'm calling because you stayed at one of our resorts in the past and you qualify for a 75% savings on an amazing four-day, three-night vacation getaway in magical Orlando, Florida; and a three-day, two-night stay in sunny South Florida where you will then depart on a fabulous 2-night cruise to the Bahamas.  And as an added bonus, you will receive an unlimited mileage rental car so you can visit all the attractions…"

13.    Defendants call consumers on their cellular telephones and Landlines using an "automatic telephone dialing system" ("ATDS") without their prior written express consent in violation of the TCPA.

14.    Defendants fail to obtain any prior express written consent to make the pre-recorded calls described herein to cellular telephone numbers and Landlines.

15.    Consumer complaints about Defendants invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- "I've had several calls that appear to be coming from a number in my area code.  It's "Emily" have a little problem with her headset.  Something about a resort.  Annoying."[3]

- "This Emily girl calls me constantly.  I never hear what company this recording comes from but I get these constantly…"[4]

- Sick of EMILY.  Calls my house phone and cell phone.  My husbands cell and sons cell.  Been calling for months now and and uses lots if local numbers to get you to answer.  Very frustrating.  By far most annoying one yet!  Almost a daily issue and sometimes several times a day.[5]

- "Yeah, Emily calls with a variety of numbers.  Never been to a "resort" so I wonder if I had fun."[6]

---

[3] http://800notes.com/Phone.aspx/1-612-800-9843
[4] *Id.*
[5] *Id.*
[6] *Id.*

- "Had the same call from Emily with her headset issues, then heard on the radio that the newest scam is them trying to get you to say "yes" so they can record your voice and use it against you to purchase things. Pretty sure she asked if I could hear her. I fell for it -- wish I'd heard about this scam a few days earlier."[7]

- "I just got that Emily call on my cell number again. This has been going on for 5 months now but they always use a different number to call you from. Now they are spoofing local area code numbers so fool you into answering the phone."[8]

- "She' called me again today. I've blocker her number everytime 'she' calls and I'm always called back by a new number. This has been going of for almost three months now. Finally I got fed up and called back. I got a message saying that the 'survey you qualify for has been timed out' and then I got the option to unsubscribe from anymore calls and be taken off the calling list by pressing '9'. I didn't call back immediately, I waited about 5ish minutes. Only time will tell to see if that works and 'Emily' and her damn headset doesn't call me anymore."[9]

16.     In placing the calls that form the basis of this Complaint, Defendants, or their affiliated entities, utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by Defendants has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

17.     Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

18.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

19.     There are numerous third party services that will additionally scrub call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[10] Indeed, one such service notes that it can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[11]

20.     When placing their calls to consumers, Defendants failed to get the prior express written consent required by the TCPA of cellular telephone owners/users and Landline owners/users as required by the TCPA to make such calls.

21.     Furthermore, Defendants call consumers who have no "established business relationship" with Defendants, and Defendants failed to scrub their lists to ensure that they were not placing calls to persons whose numbers were registered on the Do Not Call Registry. As a result, it called persons whose numbers were registered on the Do Not Call Registry.

22.     Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendants continue to call them.

---

[10] See e.g. http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[11] https://www.neustar.biz/services/tcpa-compliance

23.     Defendants knowingly made (and continue to make) telemarketing calls to cellular telephones and Landlines without the prior express written consent of the call recipients. As such, Defendants not only invaded the personal privacy of Plaintiffs and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF LESHIA BAXTER

24.     On December 15, 2004, Plaintiff Baxter registered her cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on her cellular telephone.

25.     On or around December of 2016, and more than 30 days after Plaintiff Baxter registered her cellular telephone number on the National Do Not Call Registry, Defendants, either directly, or through their affiliates and agents, made several unsolicited telemarketing calls to Plaintiff Baxter.  The calls came to Plaintiff Baxter on her cellular telephone using an artificial or prerecorded voice.

26.     The prerecorded voice on the line from 501-448-6665 stated that Plaintiff Baxter had previously stayed at Defendants' resort.  The prerecorded voice stated, specifically:

> "Hello, oh, hi there!...Oh, I am so sorry about that - I was, um…having a little problem with my headset.  Anyway, my name is Emily and I'm calling because you stayed at one of our resorts in the past and you qualify for a 75% savings on an amazing four-day, three-night vacation getaway in magical Orlando, Florida; and a three-day, two-night stay in sunny South Florida where you will then depart on a fabulous 2-night cruise to the Bahamas.  And as an added bonus, you will receive an unlimited mileage rental car so you can visit all the attractions…"

27.     Plaintiff Baxter terminated the call and blocked telephone number ending in -6665 in order to no longer receive calls from that number.

28.     Despite Plaintiff Baxter blocking the -6665 number, Defendants still called her on March 2, 2017 at 12:50 p.m. with the same prerecorded message.

29.     On information and belief, the aforementioned prerecorded message has been created/controlled and/or otherwise used by Defendants in their businesses to promote their travel packages.

30.     An image of Plaintiff Baxter's call history evidencing Defendants March 2, 2017 call is reproduced below:



31.     All of the prerecorded telephone calls from Defendants were made to solicit Plaintiff Baxter to purchase and utilize Defendants' travel services.

32.     Plaintiff Baxter never consented either orally or in writing to receive prerecorded calls placed to her cellular telephone from Defendants.

33.     At no time did Plaintiff Baxter consent (either orally or in writing) to the receipt of prerecorded calls to her cellular telephone from Defendants.

**FACTS SPECIFIC TO PLAINTIFF ARTHUR KESHISHYAN**

34.     On September 27, 2006, Plaintiff Keshishyan registered his Landline telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his Landline telephone.

35.     On or around February of 2017, and more than 30 days after Plaintiff Keshishyan registered his Landline number on the National Do Not Call Registry, Defendants, either directly, or through their affiliates and agents, made several unsolicited telemarketing calls to Plaintiff Keshishyan.  The calls came to Plaintiff Keshishyan on his Landline telephone using an artificial or prerecorded voice.

36.     On or around February 9, 2017 at 11:32 a.m. Defendants placed a prerecorded telephone call came from 818-798-5380 to Plaintiff Keshisyan.

37.     The speaker of the prerecorded message identified herself as "Emily."  She left the following message:

> "Hello, oh, hi there!...Oh, I am so sorry about that - I was, um…having a little problem with my headset.  Anyway, my name is Emily and I'm calling because you stayed at one of our resorts in the past and you qualify for a 75% savings on an amazing four-day, three-night vacation getaway in magical Orlando, Florida; and a three-day, two-night stay in sunny South Florida where you will then depart on a fabulous 2-night cruise to the Bahamas.  And as an added bonus, you will receive an unlimited mileage rental car so you can visit all the attractions…"

38.     Plaintiff Keshishyan followed the subsequent instructions to be forwarded to a live representative.  Plaintiff Keshishyan then informed the live representative that his number was on the federal Do Not Call Registry and that he was not to be called again.  However, for the sole purpose of trying to find out who was placing these unwanted calls to him, and therefore to get the calls to stop, Plaintiff Keshishyan requested Defendants email him regarding their solicitation (the "Emails").

39.     Plaintiff Keshishyan received two emails from Defendants.  Plaintiff Keshishyan received one email from Defendant Grand Celebration at February 9, 2017 at 11:52 a.m. and received one email from Defendant Blue Star at February 25, 2017 at 10:03 a.m.  *See* **Exhibit A-B.**

40. The email from Defendant Grand Celebration directed Plaintiff Keshishyan to telephone number 1-844-554-7263. *See* **Exhibit B.**

41. Upon information and belief, an agent of Defendant Grand Celebration answers a call to the -7263 number and states that the consumer is contacting "Grand Celebration Cruise Customer Care Department."

42. The email from Defendant Blue Star directed Plaintiff Keshishyan to telephone number 1-800-461-8253. *See* **Exhibit A.**

43. Upon information and good-faith belief, an agent of Defendant Blue Star answers a call to the -8253 number and states that the consumer is contacting "Grand Celebration Cruise Customer Care Department."

44. On Defendant Blue Star's Facebook page, it advertises telephone number (800) 349-5359.

45. Upon information and belief, when a consumer calls the -5359 number, an individual picks up the phone and identifies his or herself as being a representative of Defendant Grand Celebration.

46. An image of Defendant Blue Star's Facebook page advertising Defendant Grand Celebration's telephone number (-5359) is reproduced below:



47.     Furthermore, despite Plaintiff Keshishyan demanding that Defendants cease calling him on February 9, 2017, Defendants still contacted or attempted to contact Plaintiff Keshishyan on February 25, 2017 at 9:49 a.m. and April 25, 2017.

48.     An image of Plaintiff Keshishyan's call history evidencing Defendants' February 25, 2017 call and Defendants' April 25, 2017 is reproduced below:




49.     All of the prerecorded telephone calls from Defendants were made to solicit Plaintiff Keshishyan to purchase and/or otherwise utilize Defendants' travel services.

50.     Plaintiff Keshishyan never consented either orally or in writing to receive prerecorded calls placed to his landline telephone from Defendants.

51.     At no time did Plaintiff Keshishyan consent to the receipt of prerecorded calls to his Landline telephone from Defendants let alone provide prior oral or written express consent to Defendants for such calls to be placed.

52.     By making unauthorized prerecorded telephone calls as alleged herein, Defendants have caused consumers actual harm. In at least one case, a consumer could be subjected to multiple, repeating unsolicited prerecorded calls because Defendants' opt out mechanism does not work. Defendants caused Plaintiffs and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls and a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiffs' and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendants also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and in certain cases appropriating cellular minutes, in addition to the invasion of privacy and nuisance of having to answer such unsolicited calls.

53.     To redress these injuries, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals alleged in this Complaint, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls to cellular telephones and Landlines.

54.     On behalf of the Classes, Plaintiffs also seek an injunction requiring Defendants to cease all unsolicited and unauthorized prerecorded calling activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees to be paid from a common fund established for the benefit of the Classes.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the four Classes defined as follows:

**Cellular Telephone Prerecorded No Consent Class**: All persons in the United States from the four years prior to the filing of the instant action whom (1) Defendants (or a third person acting on behalf of Defendants) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendants' products and services, (4) using a prerecorded voice, and (5) for whom Defendants claims they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to call Plaintiff Baxter.

**Landline Telephone Prerecorded No Consent Class**: All persons in the United States from the four years prior to the filing of the instant action whom (1) Defendants (or a third person acting on behalf of Defendants) called, (2) on the person's landline, (3) for the purpose of selling Defendants' products and services, (4) using a prerecorded voice, and (5) for whom Defendants claims they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to call Plaintiff Keshishyan.

**Landline Telephone Prerecorded Stop Class**: All persons in the United States from the four years prior to the filing of the instant action whom (1) Defendants (or a third person acting on behalf of Defendants) called, (2) on the person's landline telephone number, (3) for the purpose of selling Defendants' products and services, (4) using a prerecorded voice, (4) after the person informed Defendants that s/he no longer wished to receive calls from Defendants.

**Do Not Call Registry Class**: All persons in the United States whom (1) Defendants (or a third person acting on behalf of Defendants) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants claim they obtained prior

express written consent in the same manner as Defendants claim they obtained prior express written consent to call the Plaintiffs.

56.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate needing to amend the class definitions following reasonable and appropriate class discovery.

57.     On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

58.     There are several questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

    a.     whether Defendants' conduct constitutes a violation of the TCPA;

    b.     whether Defendants utilized an automatic telephone dialing system or prerecorded voice to place prerecorded calls to members of the Classes;

    c.     whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct;

    d.     whether Defendants obtained prior express written consent to contact any class members on their cellular telephones;

e.    whether Defendants obtained prior express written consent to contact any class members on their Landline telephones;

f.    whether Defendants systematically made multiple telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry and whether calls were made to such persons after they requested to no longer be called; and

g.    whether Plaintiffs and the members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendants' conduct.

59.    The factual and legal bases of Defendants' liability to Plaintiffs and to the other members of the Classes are the same, resulting in injury to the Plaintiffs and to all of the other members of the Classes, including the annoyance and aggravation associated with such prerecorded calls as well as the loss of cellular plan minutes and temporary inability to enjoy and use their cellphones, as a result of the transmission of the prerecorded calls alleged herein. Plaintiffs and the other members of the Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of placing prerecorded calls. Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct. Plaintiffs, like other members of the Classes, received unsolicited prerecorded calls from Defendant. Plaintiffs are advancing the same claims and legal theory on behalf of themselves and all absent members of the Classes.

60.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiffs' claims are made in a representative capacity on behalf of the other members of the Classes.  Plaintiffs have no interest antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses. Plaintiffs have retained

counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their Counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their Counsel has any interest adverse to those of the other members of the Classes.

61.     The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted, and/or have refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendants to discontinue placing unsolicited and unauthorized prerecorded calls to the public. Likewise, Defendants have acted and fails to act on grounds generally applicable to the Plaintiffs and the other members of the Classes in placing the prerecorded calls at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

62.     In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all consumers throughout the United States who received an unsolicited and unauthorized prerecorded call from Defendants. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually

impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

63.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendants' records or through notice by publication.

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Baxter and the Cellular Telephone Prerecorded No Consent Class)

64.     Plaintiff Baxter incorporates by reference the foregoing allegations as if fully set forth herein.

65.     Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff Baxter and the other members of the Cellular Telephone Prerecorded No Consent Class on their cellular telephones in an effort to sell their products and services using a prerecorded voice as defined in the TCPA.

66.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

67.     Defendants utilized equipment that made the telephone calls to Plaintiff Baxter and other members of the Cellular Telephone Prerecorded No Consent Class simultaneously and without human intervention.

68.     Defendants failed to obtain any prior express written consent from Plaintiffs and other called parties that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

69.     Any consent that was supposedly obtained required Plaintiff Baxter and the Cellular Telephone Prerecorded No Consent Class members to receive autodialed and prerecorded calls.

70.     By making unsolicited telephone calls to Plaintiff Baxter and members of the Cellular Prerecorded No Consent Class's cellular telephones using a prerecorded voice, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by doing so without prior express written consent as required.

71.     As a result of Defendants' unlawful conduct, Plaintiff Baxter and the members of the Cellular Telephone Prerecorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones as well as the aggravation, nuisance, and invasion of privacy of receiving the calls and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

72.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Baxter and the other members of the Cellular Telephone Prerecorded No

Consent Class.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Keshishyan and the Landline Telephone Prerecorded No Consent Class)

73.     Plaintiff Keshishyan incorporates by reference the foregoing allegations as if fully set forth herein.

74.     Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff Keshishyan and the other members of the Landline Telephone Prerecorded No Consent Class on their Landlines in an effort to sell their products and services using a prerecorded voice as defined in the TCPA.

75.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

76.     Defendants utilized equipment that made the telephone calls to Plaintiff Keshishyan and other members of the Landline Telephone Prerecorded No Consent Class simultaneously and without human intervention.

77.     Defendants failed to obtain any prior express written consent from Plaintiffs and other called parties that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

78.     Any consent that was supposedly obtained required Plaintiff Baxter and the

Cellular Telephone Prerecorded No Consent Class members to receive autodialed and prerecorded calls.

79.     By making unsolicited telephone calls to Plaintiff Keshishyan and members of the Landline Prerecorded No Consent Class's cellular telephones using a prerecorded voice, Defendants violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express written consent as required.

80.     As a result of Defendants' unlawful conduct, Plaintiff Keshishyan and the members of the Landline Telephone Prerecorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

81.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Keshishyan and the other members of the Landline Telephone Prerecorded No Consent Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Do Not Call Registry Class)**

82.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

83.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to

avoid receiving telephone solicitations to which they object.

84.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

85.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[12]

86.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

---

[12] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

87.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

88.     Defendants also violated 47 C.F.R. § 64.1200(d) by failing to have a written

policy of dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

89. Defendants made more than one unsolicited telephone call to Plaintiffs and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiffs and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendants, and/or Defendants do not have a current record of consent to place telemarketing calls to them.

90. Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

91. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiffs and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

92. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**FOURTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Keshishyan and the Landline Prerecorded Stop Class)**

93. Plaintiff Keshishyan incorporates by reference the foregoing allegations as if fully set forth herein.

94. Defendants made unsolicited and unwanted prerecorded calls to telephone numbers belonging to Plaintiff Keshishyan and the other members of the Landline Prerecorded Stop Class on their landline telephone numbers after they had informed Defendants, orally and/or through the Defendants' automated prompt system, that they no longer wished to receive such calls from Defendants.

95. Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

96. Defendants utilized equipment that made the telephone calls to Plaintiff Keshishyan and other members of the Pre-recorded Stop Class simultaneously and without human intervention.

97. By making unsolicited telephone calls to Plaintiff Keshishyan and other members of the Landline Telephone Prerecorded Stop Class's landline telephone numbers using a pre-recorded voice after they requested to no longer receive such calls, Defendants violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express written consent.

98. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Landline Telephone Prerecorded Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section

227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

99.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Keshishyan and the other members of the Landline Telephone Prerecorded Stop Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Classes, pray for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff Leshia Baxter and Plaintiff Arthur Keshishyan as the representatives of their respective Classes, and appointing their counsel as Class Counsel;

B.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

C.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

D.     A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E.     An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

F.     An order requiring Defendants to identify any third-party involved in the prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

G.     An injunction requiring Defendants to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Classes;

H.    An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

I.    An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

J.    An injunction prohibiting Defendants from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

K.    An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

L.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: July 6, 2017                    **LESHIA BAXTER and ARTHUR KESHISHYAN**, individually, and on behalf of all others similarly situated,


By:   /s/Stefan Coleman
One of Plaintiffs' Attorneys

Stefan Coleman
(Law@stefancoleman.com)
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Blake J. Dugger
(blake@stefancoleman.com)
Law Offices of Stefan Coleman, P.A.
1011 W. Colter St., #236
Phoenix, Arizona 85013
Telephone: (602) 441-3704
Facsimile: (888) 498-8946

*Counsel for Plaintiff and the Putative*
*Classes*

**EXHIBIT A**

Date: Thu, Feb 9, 2017 at 11:52 AM

Subject: Certified Letter of Guarantee for N. Traveler - UBF

To: New Traveler <**mojomed@gmail.com (mailto:mojomed@gmail.com)**>



Dear New Traveler,

Welcome aboard the **Grand Celebration**, The Exclusive Cruise Liner of the Port of Palm Beach!
As requested, this is your Corporate Endorsed Certified Letter of Guarantee for our **UBF** package.
Your cruise experience is certain to be special aboard our fun-filled *MV Grand Celebration*,
which was selected as the ***"Largest & Most Luxurious Cruise Ship to ever set sail out of The
Port of Palm Beach, Florida!"*** You qualify for our cruise by being one of the first 500 people
today to take advantage of our national promotion. Congratulations!

Your significantly discounted "Cruise and Resort Stay" vacation package features the perfect
balance of extraordinary destinations, outstanding service and genuine hospitality! By combining
a two night Grand Bahama Cruise, fabulous destinations in sun-kissed Florida and the tropical
Bahamas, featuring some of the most trusted names in travel; we have created your "one call
does it all" Dream Vacation for you!

    

## YOUR VACATION PACKAGE INCLUDES:

### *YOUR 2 NIGHT CRUISE:*

- 2 Night Cruise for two aboard the ***Grand Celebration*** to **Grand Bahama Island**, with all your meals, entertainment and activities included onboard.
- $50.00 in Casino Match Play valid aboard ship in the Par-A-Dice Casino.
- Enjoy a breathtaking view of the ocean from your Oceanview Cabin upgrade.

### *YOUR ACCOMODATIONS:*

- 3 Days & 2 Nights resort accommodations in sun-kissed Fort Lauderdale, FL. with complimentary buffet dining for 2 adults. (3 meals per day per person).
- 3 Days & 2 Nights resort accommodations in magical Orlando, FL. with complimentary buffet dining for 2 adults. (3 meals per day per person).
- You will enjoy 3 sun-drenched days & 2 nights on Grand Bahama Island at the spectacular 4 star **Grand Lucayan**

### *AND YOUR CHOICE OF:*

- 8 Days transportation by Alamo or Budget Rent-A-Car while in Florida with unlimited mileage during your vacation.
  **OR**
- $100 gas reimbursement.
  **OR**
- $100 Entertainment Dollars, which may be redeemed in our Welcome center towards attraction tickets including Universal Studios™, Sea World™, Wet n' Wild™, Adventure Island™ and more!

*ALONG WITH THESE FANTASTIC BONUS GETAWAYS:*

- 3 Days 2 Nights in exciting Las Vegas, Nevada.
- 4 Days 3 Nights in romantic Puerto Vallarta, Mexico.

  *IMPORTANT: Your Bonus Getaways may be used anytime after your primary itinerary, up to 18 months from your date of purchase. And remember, you may transfer any Bonus Getaway Vacation as a gift to a family or friend free of charge!*

*PACKAGE PRICING*

- Your total package cost is only $655 ( including port tax ) per person for the 1st and 2nd passengers, based on double occupancy.
- If you wish to add a 3rd and 4th Cruise Passenger in the same cabin, additional costs are only:
  - 13- and older - $129 per person
  - 2-12 -$115 per person
  - Under 2 - $89 per person

### *GRAND LUCAYAN EXTRA PERSON RATES:*

If you wish to add a 3rd or 4th traveler at the Grand Lucayan in the same room, additional costs are only:

- Children aged 12 and under sharing parent's room are accommodated free.
- Additional persons 13 - 17 years of age: add $25.00 per night to the net room rate, persons aged 17 and over $50 per night, plus 18% tax per night and $8.00 service charge fee per person, per night and $10.00 resort fee per person, per night.
- Maximum occupancy is up to 4 persons plus an infant per room.
- Charge for rollaway is $20.00 per day. Only available in king bedded room.





## Accommodations

542 Guest Rooms & Suites with:
**491 Guest Rooms**
Island | Marina | Ocean View
**51 Suites**
1 & 2 Bedroom Suites | Ocean
Front Lanai Suites
All rooms and suites feature:
• Private balcony
• King or double beds with superior
bedding
• Bath amenities
• Flat screen TV with video on
demand and 1st run movies
• In-room safe
• Iron/ironing board
• Hair dryer

## Features & Facilities

• **THREE SUPERB SWIMMING POOLS**: including a heated lap pool, a serpentine pool, and our serene and quiet infinity pool.

• **18-HOLE CHAMPIONSHIP GOLF COURSE**: 18-hole, par-72 course designed by leading golf architect Robert Trend Jones Jr.

• **SPORTS**: offering a range of fun from four Grand Slam tennis courts, to jogging paths, shuffleboard, foosballs and Ping Pong.

• **SENSES SPA & FITNESS CENTER**: find a holistic retreat at this 25,000 sq-ft, multi-level facility, with top-quality equipment, trained professional staff, a salon and a spa boutique.

• **CASINO**: located just a few steps from the resort, it's a thrilling Las Vegas-style adult playground with tables, slot machines and tournaments.

• **CONVENTION CENTER & WEDDINGS**: distinct meeting and event areas totaling 90,000 square feet of both indoor and outdoor space.

## Restaurants & Lounges

• **CHINA BEACH**: an appetizing menu inspired by the exotic flavors of Vietnam, Thailand, Korea, Indonesia and Malaysia.

• **CHINA GRILL**: for a quick snack or something more substantial, from an Asian chicken salad to a traditional hamburger or hot dog.

• **CHURCHILL'S**: enjoy a four-course dinner and live entertainment at Churchill's, a world class restaurant, including succulent steaks, pastas and the best in local seafood.

• **HAMMERHEADS BAR**: swim up or drop in; Hammerheads serves ice cold beverages and snacks that you won't even have to leave the pool to enjoy.

• **HAVANA CAY LOUNGE & CIGAR BAR**: fine wines, ports and cigars in a sophisticated setting.

• **IRIES**: The perfect place to enjoy a taste of the Bahamian cuisine, cocktails and live entertainment.

• **PLANTATION CAFE**: a wide selection of freshly made pastries, coffee, sandwiches and delicious gelato served in a relaxed atmosphere.

• **WILLY BROADLEAF**: international cuisine that draws inspiration from around the globe mixes in irresistible flavors.

Grand Lucayan is geared for families searching for a Caribbean escape, with family-friendly accommodations and an acclaimed children's program. Grand Lucayan topped Parents Magazine's Best Beach Resort for Families list beating out hundreds of resorts for the #1 title in 2008. This resort is alive with Caribbean flair. Arches and columns add a sense of majesty to the airy, sinuous Bahamian-inspired lobby and hallways.

Click the link below to learn more about Grand Lucayan:

**http://www.MyBahamaCruise.com/#!grand-lucayan/to8n9**
**(http://www.MyBahamaCruise.com/#!grand-lucayan/to8n9)**

## ABOUT THE GRAND CELEBRATION:



The flagship, the ***Grand Celebration***, conveniently departs from the **Port of Palm Beach** in South Florida at 5:30 P.M. (EST), and travels round trip to **Grand Bahama Island** - widely regarded as "The Jewel of the Bahamas." This tropical paradise is known for its unspoiled powder-white beaches, crystal clear blue waters and a relaxed atmosphere. It's also home to our luxurious resort destinations.

This beautiful luxury full-size cruise ship boasts 751 well-appointed cabins, allowing us to accommodate up to 1,896 passengers comfortably. Cabin décor is state of the art, yet modern and comfortable. With 24-hour room service available, and an emphasis on grand service throughout the ship, the **Grand Celebration** offers our travelers a memorable onboard cruise experience.

The **MV Grand Celebration** is the finest to ever sail out of the Port of Palm Beach and the best cruise option to the Bahamas because of the flexible vacation options it provides. You will find yourself bathing in the sun up on deck 10 with five swimming pools to cool off in and Jacuzzis to relax in. Perhaps a stop on deck 9 to our luxurious spa, salon and fitness center will fit your needs while you travel the open seas. A state-of-the-art performance Grand Theater can be found on decks 8 & 9 with nightly Las Vegas style shows for your enjoyment. A wide variety of slots and table games, many of which you would not find at a variety of casinos on land, can be played in our *ParADice Casino* on deck 9. Our chic multi-story night club, *Club Chic*, offers dancing and entertainment into the late hours of the night on deck 9.

While the adults enjoy the casino or night club, kids can find themselves in one of three age appropriate Clubs to keep them entertained during their entire vacation. Throughout the ship there are different style bars and lounges to fit everyone's taste. – from a Piano Club for the finest most relaxing time to catch up with a cocktail to our delightful British-style Cigar Bar for darts and a pint – you'll be sure to find your spot on board. On deck 8 you'll find our duty free gift shops so you can take something home to remember your fabulous vacation! And of course we have our Internet Café to keep in touch with friends and family back home while you're away. The Grand Celebration has so much to offer and we can't wait to have you sail away with us!



Everyone knows cruising and dining are synonymous, and with the **Grand Celebration**, it's no different. Multiple dining venues offer our passengers the choice of four distinct restaurants with mouth-watering cuisine sure to satisfy whatever their appetite is in the mood for. *Stellar Prime* allows you to truly wine and dine; as you may choose from a wide variety of fresh seafood, duck, chicken and mouth-watering steak options. *Plunge Grill* gives you the casual setting with a delightful variety of everything you could imagine from right off the grill. The *Admiralty Club** is

our elegant and upscale dining, for anyone celebrating that "special occasion", or for any travelers who love to be waited on hand and foot! With this upgraded menu of signature Italian dishes, the impeccable service and soothing ambience just makes it that much better. The delectable *Ocean View Buffet* gives you a variety of food options right by the pool. There are also multiple pub and snack areas for our guests that love lots of options!

We look forward to having you aboard to sail the open seas on the **Grand Celebration** to beautiful Grand Bahama Island! See you soon!

For more information visit us at **www.MyBahamaCruise.com (http://www.MyBahamaCruise.com)**

Sincerely,

Blue Star Cruise Promotions Department

**Blue Star Cruises**

**Disembarking from Port of Palm Beach:**

**One E. 11th St.**

**Riviera Beach, FL 33404**

**Customer Cruise Promotions: Toll Free 1-800-461-8253 ()**

*Passports are not currently required for boarding the ship*, but are useful and make getting on and off the cruise easier. For cruise only passengers that do not have a passport, a **driver's license** and **raised-seal certified copy of their birth certificate** are required.

For our customers that are staying on Grand Bahama Island with one of our **stay and play packages, a passport is absolutely required**. Click the link below to get your passport:

*http://travel.state.gov/passport/passport_1738.html (http://travel.state.gov/passport/passport_1738.html)*



**EXHIBIT B**

---------- Forwarded message ----------

From: **mojomed Mojo Jojo** <**mojomed@gmail.com (mailto:mojomed@gmail.com)**>

Date: Sat, Feb 25, 2017 at 10:05 AM

Subject: Fwd: Certified Letter of Guarantee for A. K - URF

To: A Keshishyan <**akeshishyan@gmail.com (mailto:akeshishyan@gmail.com)**>


---------- Forwarded message ----------

From: **Register** <**cruiseinfo@securecruisecabin.com (mailto:cruiseinfo@securecruisecabin.com)**>

Date: Sat, Feb 25, 2017 at 10:03 AM

Subject: Certified Letter of Guarantee for A. K - URF

To: Arthur K <**mojomed@gmail.com (mailto:mojomed@gmail.com)**>



Dear Arthur K,

Welcome aboard the **Grand Celebration**, The Exclusive Cruise Liner of the Port of Palm Beach! As requested, this is your Corporate Endorsed Certified Letter of Guarantee for our **URF** package. Your cruise experience is certain to be special aboard our fun-filled ***MV Grand Celebration***, which was selected as the ***"Largest & Most Luxurious Cruise Ship to ever set sail out of The Port of Palm Beach, Florida!"*** You qualify for our cruise by being one of the first 500 people today to take advantage of our national promotion. Congratulations!

Your notably discounted "Cruise and Resort Stay" vacation package features the perfect balance of extraordinary destinations, outstanding service and genuine hospitality! By combining a two night Grand Bahama Cruise, fabulous destinations in sun-kissed Florida and the tropical Bahamas, featuring some of the most trusted names in travel; we have created your "one call does it all" Dream Vacation for you!



## YOUR VACATION PACKAGE INCLUDES:

***YOUR 2 NIGHT CRUISE:***

- 2 Night Cruise for two aboard the **_Grand Celebration_** to **Grand Bahama Island**, with all your meals, entertainment and activities included onboard.
- $50.00 in Casino Match Play valid aboard ship in the Par-A-Dice Casino.
- Enjoy a breathtaking view of the ocean from your Oceanview Cabin upgrade.

***YOUR ACCOMMODATIONS:***

- 3 Days & 2 Nights resort accommodations in sun-kissed Fort Lauderdale, FL. with complimentary buffet dining for 2 adults. (3 meals per day per person).
- 3 Days & 2 Nights resort accommodations in magical Orlando, FL. with complimentary buffet dining for 2 adults. (3 meals per day per person).
- You will enjoy 3 sun-drenched days & 2 nights on Grand Bahama Island at the spectacular 4 star **Grand Lucayan**

***AND YOUR CHOICE OF:***

- 8 Days transportation by Alamo or Budget Rent-A-Car while in Florida with unlimited mileage during your vacation.
  **OR**
- $100 gas reimbursement.
  **OR**

- $100 Entertainment Dollars, which may be redeemed in our Welcome center towards attraction tickets including Universal Studios™, Sea World™, Wet n' Wild™, Adventure Island™, Arabian Nights™ and more!

**ALONG WITH THESE FANTASTIC BONUS GETAWAYS:**

- 3 Days 2 Nights in exciting Las Vegas, Nevada.
- 4 Days 3 Nights in romantic Puerto Vallarta, Mexico.
  *IMPORTANT: Your Bonus Getaways may be used anytime after your primary itinerary, up to 18 months from your date of purchase. And remember, you may transfer any Bonus Getaway Vacation as a gift to a family or friend free of charge!*

**PACKAGE PRICING**

- Your total package cost is only $835 ( including port tax ) per person for the 1st and 2nd passengers, based on double occupancy.
- If you wish to add a 3rd and 4th Cruise Passenger in the same cabin, additional costs are only:
  - 13- and older - $129 per person
  - 2-12 -$115 per person
  - Under 2 - $89 per person

**GRAND LUCAYAN EXTRA PERSON RATES:**

If you wish to add a 3rd or 4th traveler at the Grand Lucayan in the same room, additional costs are only:

- Children aged 12 and under sharing parent's room are accommodated free.
- Additional persons 13 - 17 years of age: add $25.00 per night to the net room rate, persons aged 17 and over $50 per night, plus 18% tax per night and $8.00 service charge fee per person, per night and $10.00 resort fee per person, per night.
- Maximum occupancy is up to 4 persons plus an infant per room.
- Charge for rollaway is $20.00 per day. Only available in king bedded room.



## Accommodations

542 Guest Rooms & Suites with:
**491 Guest Rooms**
Island | Marina | Ocean View
**51 Suites**
1 & 2 Bedroom Suites | Ocean Front Lanai Suites
All rooms and suites feature:
• Private balcony
• King or double beds with superior bedding
• Bath amenities
• Flat screen TV with video on demand and 1st run movies
• In-room safe
• Iron/ironing board
• Hair dryer

## Features & Facilities

• **THREE SUPERB SWIMMING POOLS**: including a heated lap pool, a serpentine pool, and our serene and quiet infinity pool.

• **18-HOLE CHAMPIONSHIP GOLF COURSE**: 18-hole, par-72 course designed by leading golf architect Robert Trend Jones Jr.

• **SPORTS**: offering a range of fun from four Grand Slam tennis courts, to jogging paths, shuffleboard, foosballs and Ping Pong.

• **SENSES SPA & FITNESS CENTER**: find a holistic retreat at this 25,000 sq-ft, multi-level facility, with top-quality equipment, trained professional staff, a salon and a spa boutique.

• **CASINO**: located just a few steps from the resort, it's a thrilling Las Vegas-style adult playground with tables, slot machines and tournaments.

## Restaurants & Lounges

• **CHINA BEACH**: an appetizing menu inspired by the exotic flavors of Vietnam, Thailand, Korea, Indonesia and Malaysia.
• **CHINA GRILL**: for a quick snack or something more substantial, from an Asian chicken salad to a traditional hamburger or hot dog.
• **CHURCHILL'S**: enjoy a four-course dinner and live entertainment at Churchill's, a world class restaurant, including succulent steaks, pastas and the best in local seafood.
• **HAMMERHEADS BAR**: swim up or drop in; Hammerheads serves ice cold beverages and snacks that you won't even have to leave the pool to enjoy.
• **HAVANA CAY LOUNGE & CIGAR BAR**: fine wines, ports and cigars in a sophisticated setting.
• **IRIES**: The perfect place to enjoy a taste of the Bahamian cuisine, cocktails and live entertainment.
• **PLANTATION CAFE**: a wide selection of freshly made pastries, coffee, sandwiches and delicious

- **CONVENTION CENTER & WEDDINGS**: distinct meeting and event areas totaling 90,000 square feet of both indoor and outdoor space.

gelato served in a relaxed atmosphere.
- **WILLY BROADLEAF**: international cuisine that draws inspiration from around the globe mixes in irresistible flavors.

Grand Lucayan is geared for families searching for a Caribbean escape, with family-friendly accommodations and an acclaimed children's program. Grand Lucayan topped Parents Magazine's Best Beach Resort for Families list beating out hundreds of resorts for the #1 title in 2008. This resort is alive with Caribbean flair. Arches and columns add a sense of majesty to the airy, sinuous Bahamian-inspired lobby and hallways.

## ABOUT THE GRAND CELEBRATION:



The flagship, the ***Grand Celebration***, conveniently departs from the **Port of Palm Beach** in South Florida at 5:30 P.M. (EST), and travels round trip to **Grand Bahama Island** - widely regarded as "The Jewel of the Bahamas." This tropical paradise is known for its unspoiled powder-white beaches, crystal clear blue waters and a relaxed atmosphere. It's also home to our luxurious resort destinations.

This beautiful luxury full-size cruise ship boasts 751 well-appointed cabins, allowing us to accommodate up to 1,896 passengers comfortably. Cabin décor is state of the art, yet modern and comfortable. With 24-hour room service available, and an emphasis on grand service throughout the ship, the **Grand Celebration** offers our travelers a memorable onboard cruise experience.

The **MV Grand Celebration** is the finest to ever sail out of the Port of Palm Beach and the best cruise option to the Bahamas because of the flexible vacation options it provides. You will find yourself bathing in the sun up on deck 10 with two large swimming pools to cool off in and multiple Jacuzzis to relax in. Perhaps a stop on deck 9 to our luxurious Indulgence Salon & Spa or our Ship Shape Fitness Center will fit your needs while you travel the open seas. A state-of-the-art performance Grand Theater can be found on decks 8 & 9 with nightly Las Vegas style shows for your pleasure. A wide variety of slots and table games, many of which you would not find at a variety of casinos on land, can be played in our *Par-A-Dice Casino* on deck 9. The *Dancing Martian* will give the adults an incredible evening of dancing under the stars on deck 11, or if being inside is more your style, *Voltage Night Club*, offers dancing and entertainment into the late hours of the night on deck 9.

While the adults enjoy the casino or night club, kids can find themselves in one of three age appropriate Clubs to keep them entertained and on interactive adventures during their entire vacation. Throughout the ship there are different style bars and lounges to fit everyone's taste – from a Piano Martini Bar for a relaxing time to catch up with a cocktail and listen to live music to our delightful British-style Cigar Bar for darts and a pint – you'll be sure to find your spot on board. On deck 8 you'll find our duty free gift shops so you can take something home to remember your fabulous vacation! And of course we have our Internet Café to keep in touch with friends and family back home while you're away. The Grand Celebration has so much to offer and we can't wait to have you sail away with us!



Everyone knows when you talk about a cruise – you always talk about the food - and with the **Grand Celebration**, you'll find it's no different. Multiple dining venues offer our passengers the choice of four distinct restaurants with mouth-watering cuisine sure to satisfy whatever their

appetite is in the mood for. *Stellar Prime* allows you to truly wine and dine; as you may choose from a wide variety of fresh seafood, duck, chicken and mouthwatering steak options. *Plunge Grill* gives you the casual setting with a delightful variety of everything you could imagine from right off the grill. The *Admiralty Club\** is our elegant and upscale dining, for anyone celebrating that "special occasion", or for any travelers who love to be waited on hand and foot! With this upgraded menu of signature Italian dishes, the impeccable service and soothing ambience just makes it that much better. The delectable *Ocean View Buffet* gives you a variety of food options right by the pool. There are also multiple pub and snack areas for our guests that love lots of options!

We look forward to having you aboard to sail the open seas on the **Grand Celebration** to beautiful Grand Bahama Island! See you soon!

For more information visit us at **www.GrandCelebCruises.com (http://www.GrandCelebCruises.com)**

Sincerely,

Grand Celebration Cruises and Accommodations Promotions Department

**Grand Celebration Cruises and Accommodations**

**Disembarking from Port of Palm Beach:**

**One E. 11th St.**

**Riviera Beach, FL 33404**

**Customer Cruise Promotions: Toll Free 1-844-554-7263 ()**

***Passports are not currently required for boarding the ship**, but are useful and make getting on and off the cruise easier. For cruise only passengers that do not have a passport, a **driver's license** and **raised-seal certified copy of their birth certificate** are required.*

*For our customers that are staying on Grand Bahama Island with one of our **stay and play packages, a passport is absolutely required**. Click the link below to get your passport:*

*http://travel.state.gov/passport/passport_1738.html (http://travel.state.gov/passport/passport_1738.html)*